STATE of Missouri, Respondent,

v.

Trancy R. CLARK, Appellant.

Trancy R. CLARK, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 50391, 51622.

Missouri Court of Appeals,
Western District.

June 25, 1996.

---

Rose M. Wibbenmeyer, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kurt U. Schaefer, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and HANNA and SPINDEN, JJ.

LOWENSTEIN, Judge.

In this consolidated appeal, Clark appeals his convictions and the denial of his motion for postconviction relief under Rule 29.15. Clark does not challenge the sufficiency of the evidence supporting his conviction. The facts and inferences in the light most favorable to the verdict are as follows:

On November 30, 1993, two undercover police officers were involved in a street-level narcotics investigation in Fulton. The undercover officers were cruising up and down a Fulton street when a vehicle began following them and flashed its lights at them.

The officers pulled over, and Clark exited his car and approached their car on foot. Clark asked the officers what they were looking for and then sold them $20 worth of crack cocaine.

On December 9, 1993, the scenario repeated itself, Clark again flagging down the officers and offering to sell them drugs. However, this time when Clark took the officers' $20, he failed to give them cocaine, but instead simply stole the money.

Trancy Clark was convicted following a jury trial of delivery of a controlled substance, § 195.211 RSMo. (1994) and misdemeanor stealing, § 570.030 RSMo. (1994). Clark was sentenced as a prior and persistent offender to concurrent terms of imprisonment of ten and one years, respectively.

## I. DIRECT APPEAL

■ Clark's sole point is that the trial court plainly erred in failing to *sua sponte* declare a mistrial following the closing argument by the prosecutor. Clark argues that the prosecutor: (1) "improperly personalized his argument to the jury," and (2) "improperly inflamed the jury" by calling cocaine "poison" and by telling the jury that "people like Mr. Clark kill."

■ Clark admits that this point of error is not preserved for appellate review under Rule 30.20, but requests that this court use its discretion to review for plain error. "A court should rarely grant relief on assertions of plain error as to closing argument. . . . This is because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v. Clemmons,* 753 S.W.2d 901, 907—08 (Mo. banc 1988) *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988) (citations omitted). With the above in mind, this court will look for plain error causing manifest injustice or miscarriage of justice. Rule 30.20.

Clark complains that the prosecutor improperly personalized his closing argument

to the jury. The following excerpt from a Missouri Supreme Court case cited by Clark is helpful:

It is well settled that the prosecutor may not personalize his argument to the jury. The jury must act objectively, without fear or prejudice. They must determine the guilt or innocence of the defendant from the evidence and it is improper for the prosecutor to taint their judgment with suggestions of personal danger to them or their families if the defendant is acquitted. *State v. Raspberry*, 452 S.W.2d 169, 172 (Mo.1970) (citations omitted).

It is clear to this court that the complained of argument did not "personalize," at least in the sense that the prosecutor's argument could not reasonably have made the jurors fear for their lives or their families lives if Clark were acquitted.

The basis for the allegedly personalized argument occurred when the prosecutor reminded the jury that one of the members of the venire panel, Mr. Flowers, had indicated during voir dire that he had a friend who had died from a drug overdose. The pertinent part of the voir dire was as follows:

[Prosecutor]: This case involves, as the judge told you, the delivery of cocaine. Is there anyone here who has been a victim or been involved in the drug environment? In other words, as the judge said, there's a controversy about drugs and legalizing them and about drug-related crimes. Has anyone here been victimized or had a friend that's been victimized by the drug environment?

Okay. I see a hand over here. Yes, sir.

Venireman Flowers: Yes, I had a buddy that O D'd on that.

[Prosecutor]: You had a friend that overdosed, and he died?

Venireman Flowers: Yeah.

[Prosecutor]: As a result of that, do you have just a passionate hatred for drugs?

Venireman Flowers: Yeah, I do.

[Prosecutor]: Okay. Would that cause you a problem being a juror in a case where it's about drugs?

Venireman Flowers: It might.

[Prosecutor]: It might, okay. Thank you sir.

The prosecutor went on to question other jurors whether they had had any experiences with drugs that would prevent them from being fair and impartial. Defense counsel also questioned the panel about past experiences with drugs or the drug environment. Mr. Flowers and one other person who had a relative involved with drugs were stricken from the panel. No one else on the venire panel indicated an inability to impartially serve on the jury in a case in which drugs were involved.

At trial during closing argument, the prosecutor said the following:

[Prosecutor]: [I]t's a harsh crime. How so? The first time I saw crack cocaine— for many of you the first time you saw crack cocaine was here today—I was shocked at how small a package poison can come in. It's tiny. But it kills.

How many of us remember Mr. Flowers? We know him. Sat over here. A friend of his is dead.

[Mr. Parley]: Your Honor, I'll object to improper argument.

[The Court]: The objection will be overruled.

[Prosecutor]: A friend of his is dead because of drugs. Don't let them throw you off. That poison comes in a small package, but it kills sure enough. It is a harsh crime; Mr. Clark even admitted that. He sat up here on the witness stand, smiled when he said it, "I weighed things around. And I'd rather have a little stealing case than a serious delivery case." He knows it's serious. It's serious for several reasons. The main reason is the people that deliver drugs, the people like Mr. Clark kill. Think about it. That's why it's serious. And he knows it's serious, and he knows he's on the hook for it.

Later, the prosecutor again mentioned Mr. Flowers to illustrate that a police officer could recognize Clark without knowing his name:

[Prosecutor]: The first time I saw him I knew his face but I didn't know his name. That's a lot like Mr. Flowers. Many of

you knew his face, but even when I mentioned his name in my argument you didn't put the name together with the face of the gentleman whose friend died from drugs. They want you to think it's unreasonable that you know a face and not a name. But it's not.

The prosecutor again mentioned Mr. Flowers in a similar manner during rebuttal.

 Although the above argument clearly would not make a juror fear for his or her safety were Clark acquitted, this court is willing to address Clark's concern that mentioning Mr. Flowers' friend's death was an effort to inflame the passions and prejudices of the jury.

Certainly, it is a powerful argument against drug offenders that drugs kill, and that drug dealers inevitably sell some drugs that will cause death. It is also possible that the prosecutor was attempting to inflame the jury through his use of hyperbole and his mention of Mr. Flowers.

However, the jury's ability to decide matters fairly, using matters within the evidence and within their common knowledge, should not be underestimated. "It is proper for counsel to argue to the jury matters of common knowledge." *State v. Lakaner*, 831 S.W.2d 769, 772 (Mo.App.1992). It is common knowledge that crack cocaine can lead to death and that selling crack is illegal because it is dangerous. Further, the jury was all aware of Mr. Flowers's friend's death because of the voir dire proceedings, and the jury was composed of people who had indicated that they had no particular prejudice against the defendant in a drug case. The trial court did not commit plain error by refusing to *sua sponte* declare a mistrial in these specific circumstances. No manifest injustice or miscarriage of justice occurred; therefore, plain error relief is denied. The point is denied.

## II.

Clark's second point is that the motion court clearly erred in denying his Rule 29.15 motion following an evidentiary hearing because his trial attorney was ineffective by failing to object and preserve for appeal "is-sues regarding the state's highly improper and prejudicial argument." Because we have held that the argument was not improper under the circumstances, defense counsel was not ineffective by failing to object. *State v. Six*, 805 S.W.2d 159, 168 (Mo. banc 1991), *cert. denied.* 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). Point denied.

The judgments are affirmed.

All concur.