STATE of Missouri, Respondent,

v.

Steven TRAMBLE, Appellant.

No. ED 97507.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 16, 2012.

Andrew E. Zleit, Assistant Public Defender, Office of the Missouri Public Defender, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Jessica P. Meredith, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Judge.

### Introduction

The appellant, Steven Tramble ("Tramble"), appeals from the judgment entered upon a jury verdict of one count of first-degree robbery, in violation of Section 569.020[1], one count of attempted first-degree robbery, in violation of Section 564.011, and two counts of armed criminal action, in violation of Section 571.015. Tramble alleges first that the trial court abused its discretion by overruling defense counsel's objection to the prosecutor's closing remarks, which he claims were inflammatory, prejudicial, and a plain appeal to the emotions of the jurors. Second, Tramble claims that the trial court plainly erred in allowing the State to cross-examine him regarding his prior convictions. Finding no error, we affirm.

### Factual and Procedural History

Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. On June 29, 2010, Tramble and Cyron Kirkland ("Kirkland") were driving around St. Louis City in Tramble's "chameleon" colored Buick Riviera. At approximately 10:30 a.m., Joshua Golden ("Golden") was standing at a bus stop at the corner of Kennedy and Whittier when a car that "changed colors" drove by Golden and pulled into a nearby alley. Golden made eye contact with Kirkland as the car drove past. Shortly thereafter, Kirkland came out of the alley and began walking

---

1. All statutory references are to RSMo. Cum. Supp. (2010).

toward Golden. Kirkland told Golden that it was a stick-up, showed Golden the handle of a gun in his waistband, and took Golden's Fossil watch and cell phone before running back toward the direction of the alley.

Around 11 a.m., Marie Lingo and her mother Sandra Lingo were standing at a bus stop at the corner of Norwood Avenue and St. Louis Avenue while a third woman was walking by. Tramble approached the women and asked the third woman if she had any cigarettes. As Tramble and the third woman walked away from the bus stop, Kirkland, wearing a ski mask and holding a gun, came up behind Marie and Sandra Lingo and demanded their possessions. Kirkland grabbed Marie Lingo's purse and ran, along with Tramble, toward Tramble's car. As Kirkland ran, he threw the contents out of Marie Lingo's purse before throwing the purse onto the street. Marie Lingo's wallet was later recovered on the next street over.

The victims reported the crimes to the St. Louis Metropolitan Police Department, and a dispatch was broadcast to officers regarding a robbery involving a chameleon-colored Buick Riviera. At approximately 11:30 a.m., a police officer observed a chameleon-colored car and turned around to follow it. When the officer caught up with the car, he saw that it was parked along the curb. The officer then witnessed Tramble throwing items onto the ground, which were later determined to be a Fossil watch and a cell phone. Tramble was arrested and later charged by substitute information in lieu of indictment as a prior and persistent offender with two counts of first-degree robbery, in violation of Section 569.020, one count of attempted first-degree robbery, in violation of Section 564.011, and three counts of armed criminal action, in violation of Section 571.015.

After a jury trial, Tramble was found guilty of one count of first-degree robbery, one count of attempted first-degree robbery, and two counts of armed criminal action in connection with the robbery of Marie and Sandra Lingo. Tramble was found not guilty of one count of robbery and one count of armed criminal action in connection with the robbery of Joshua Golden. Tramble filed a motion for new trial, which the trial court denied. Tramble was sentenced to 18 years in the Missouri Department of Corrections for each of the first-degree robbery and armed criminal action counts, and 15 years for the attempted robbery count, to be served concurrently. This appeal follows.

## Points on Appeal

Tramble's first point on appeal alleges that the trial court abused its discretion by overruling defense counsel's objection to the State's closing argument. In his second point on appeal, Tramble argues that the trial court plainly erred in allowing the State to cross-examine him regarding the sentences he served following his prior convictions.

## Standard of Review

"The trial court maintains broad discretion in controlling closing arguments." *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010) (*quoting State v. Edwards*, 116 S.W.3d 511, 537 (Mo. banc 2003)). "Closing arguments must be examined in the context of the entire record." *Id.* Because Tramble's claim of alleged error made during closing arguments was preserved at trial and in his motion for new trial, we will review for abuse of discretion—whether he was prejudiced to the extent that there is a reasonable probability that the outcome at trial would have been different had the error not been committed. *Id.; see*

*also State v. Burton,* 219 S.W.3d 778, 781 (Mo.App. E.D.2007).

However, because Tramble neither objected at trial to the State's questions regarding his prior convictions nor included the claim in his motion for new trial, this Court may review his second point on appeal only for plain error under Rule 30.20[2]. *State v. Beam,* 334 S.W.3d 699, 704 (Mo. App. E.D.2011). The plain error standard permits, but does not require, this Court to review for plain errors substantially affecting the rights of a defendant that resulted in a manifest injustice or miscarriage of justice. *Id.* Review for plain error requires two steps. *Id. (citing State v. Freeman,* 189 S.W.3d 605, 608 (Mo.App. W.D.2006)). First, we review the record to determine whether the trial court committed "evident, obvious, and clear" error that affected the substantial rights of the defendant. *Id.* "If this Court finds such error, we must then determine whether a manifest injustice or a miscarriage of justice resulted from the error." *Id.*

### Discussion

**I. The trial court did not abuse its discretion when it overruled defense counsel's objection to the State's closing argument.**

In his first point on appeal, Tramble argues that the trial court abused its discretion by overruling defense counsel's objection to the State's closing argument. Tramble claims that the State's remarks were inflammatory, prejudicial, and a plain appeal to the emotions of the jurors. We are not persuaded.

■ During closing argument, the State is permitted considerable latitude in arguing the necessity of law enforcement, the duty of the jury to convict the defendant and prevent crime, and the results to society of a failure to uphold the law. *State v. Schaefer,* 855 S.W.2d 504, 507 (Mo. App. E.D.1993). The prosecutor may comment on the prevalence of crime in the city and the evils that may befall society if a jury fails its duty. *State v. Burton,* 219 S.W.3d 778, 781 (Mo.App. E.D.2007). Comments of this general nature are in stark contrast to comments that focus on the defendant and the defendant's conduct. A prosecutor may not speculate as to the future possible acts or conduct of a defendant. A defendant has the right to be tried only for what he has or has not done, not what he might do in the future. *Schaefer,* 855 S.W.2d at 507. The purpose of this rule is to preclude argument that "goes beyond bounds so as to excite and inflame passion or prejudice" toward the defendant. *Id. (quoting State v. Kalter,* 828 S.W.2d 690, 692 (Mo.App. E.D.1992)).

■ Improper personalization that invites error occurs when the State suggests that the defendant on trial poses a personal danger to the jurors or their families. *State v. Deck,* 303 S.W.3d 527, 540 (Mo. banc 2010). Improper personalization also occurs when the State asks jurors to place themselves in the shoes of the victim or at the crime scene, thereby arousing fear in the jury. *Id.; West v. State,* 244 S.W.3d 198, 201 (Mo.App. E.D.2008). An argument is not personalized, however, if it does not suggest a *personal* danger to the jurors or their families if the defendant were to be acquitted. *West* 244 S.W.3d at 201 (emphasis added). "The use of the word 'you' during closing argument does not automatically amount to an improper personalization." *Id.*

In the rebuttal portion of its closing argument, the State argued as follows:

---

**2.** All rule references are to Mo. R.Crim. Pro. (2010).

[PROSECUTOR]: These robberies affect not only the people in those areas but every person in the City of St. Louis is the victim of a robbery, anybody who wants to walk down to the bus stop because not only do we now know you have to fear the actual robber, you have to look around to see if someone is waiting for him, someone else has it for you, somebody else who is in on it.

[DEFENSE COUNSEL]: Objection, Your Honor. She's injecting the jurors into the case.

[THE COURT]: Again, the jury is the trier of fact. You can accept or reject the argument.

■ Tramble argues that the prosecutor crossed the line when she "invited the jurors" to fear that while they were standing at the bus stop, they would always need to be on guard that there could be an accomplice waiting in the wings. He alleges that when the prosecutor told the jurors they would always have to wonder whether the accomplice "has it for you," the prosecutor was referring to the jurors. Tramble also claims that because the trial court informed jurors before trial that the sheriff would handle any problems they might have with their bus pass or parking ticket, the prosecutor's use of the bus stop example during closing argument inappropriately raised fear in the jurors who were charged with dispassionately weighing the evidence. We disagree.

By suggesting that persons have reason to fear not only the criminal, but also his or her accomplice, the prosecutor merely noted the prevalence of crime in the city and the effect that this type of crime has on the community. These statements did not speculate as to any future acts involving Tramble. The prosecutor made no mention of Tramble by name and did not use any language that would "excite and inflame passion or prejudice" toward

Tramble specifically. The statements also were not an improper personalization because there was no suggestion of *personal* danger to the jurors or their families if Tramble were acquitted. *Deck*, 303 S.W.3d at 540. Nor did the State ask the jurors to place themselves in the victims' shoes. *West*, 244 S.W.3d at 201. Although the prosecutor used the phrase "has it for you" in her closing argument, Tramble's assertion that the prosecutor meant an accomplice specifically has it for the jurors would require us to take the statement out of context. The statement simply referred to the effects of crime on every person in the City of St. Louis, nothing more. The context of this statement within the prosecutor's closing argument clearly shows that the word "you" was used as an indefinite and generic pronoun referring to an unspecified person, and not as a second person pronoun referring to a specific individual.

Nor do we find that the trial court's general instructions to the jurors about bus passes and parking tickets provides a basis for finding the improper personalization required to sanction the State's closing argument. The connection between the routine administrative statement made by the trial court to the jurors prior to trial and the prosecutor's closing argument is tenuous at best. The example used by the prosecutor properly commented on the facts of the crime as adduced by the evidence at trial. The victims in this case were robbed while waiting at a bus stop. The trial court's informational statement to the jurors about bus passes and parking tickets does not somehow nullify the evidence adduced at trial for purposes of closing argument. Tramble's argument to the contrary has no merit.

The trial court did not abuse its discretion by allowing the State to comment on the effects of crime on community. The

State did not suggest that this specific defendant posed a personal threat to the jurors or their families. Point One is denied.

## II. The trial court did not plainly err in allowing the State to cross-examine Tramble regarding the sentences he served following his prior convictions.

In his second point on appeal, Tramble claims that the trial court plainly erred when it allowed the State to cross-examine Tramble regarding the sentences he served following his prior convictions. Because Tramble failed to preserve this point at trial, we will review only for plain error under Rule 30.20. Under plain error review, we first must we review the record to determine whether the trial court committed "evident, obvious, and clear" error that affected the substantial rights of the defendant. *State v. Beam*, 334 S.W.3d 699, 704 (Mo.App. E.D.2011). "If this Court finds such error, we must then determine whether a manifest injustice or a miscarriage of justice resulted from the error." *Id.*

When a defendant chooses to testify, he opens the door to an attack on his credibility by the prosecution through proof of his prior convictions. Section 491.050; *State v. Applewhite*, 771 S.W.2d 865, 869 (Mo.App. E.D.1989). On cross-examination, the State has an absolute right to demonstrate prior convictions and the nature and kind thereof for the purposes of impeachment, limited only by the restriction that the cross-examiner shall not go into details of the crimes leading to prior convictions. *State v. Frison*, 775 S.W.2d 314, 318–19 (Mo.App. E.D.1989) (*citing State v. Silcox*, 694 S.W.2d 755, 756 (Mo.App. E.D.1985)). The State may inquire into the nature, date, and place of prior convictions and the resulting sentences. *Id.* (*citing State v. Lane*, 613 S.W.2d 669, 679 (Mo.App. E.D.1981)).

Coinciding with the State's right to demonstrate prior convictions is the trial court's duty to ensure that a criminal defendant has a fair trial, which includes the obligation to exercise its discretion to control obvious misconduct by the prosecution. *State v. Roper*, 136 S.W.3d 891, 902 (Mo.App. W.D.2004). We note, however, that Missouri courts have been reluctant to find error when a trial court declines to take action *sua sponte* during cross-examination. *Id.* "Indeed, such invitations have been rejected in all but the most unusual circumstances." *Id. Sua sponte* action should be exercised only "in the most unusual and exceptional circumstances. Thus, we will rarely find plain error where a trial court has failed to take *sua sponte* action with regard to the proceedings." *Id.* at 903.

On direct examination, Tramble testified to the nature and number of his prior convictions and the sentences he received. Tramble's testimony indicated that he pled guilty to six separate crimes over the span of six years. On cross-examination, the State asked Tramble about the same six convictions and sentences, but also elicited testimony that Tramble was paroled early in connection with one of the offenses. The prosecutor further asked Tramble whether he would agree that he received "pretty favorable dispositions" given his short sentences. Tramble replied, "For the most part, yes."

Tramble alleges that this questioning created a risk that the jury would improperly consider whether Tramble had been sufficiently punished on past convictions unrelated to the charges before this jury. By creating a situation where the jury might consider Tramble's past "favorable dispositions," rather than deciding his guilt based on the strength of the State's case,

Tramble suggests he has suffered a manifest injustice. Tramble relies on *State v. Newman*, where the State's questions about the defendant's prior convictions were compounded by further questions about parole violations and specific details of the defendant's crimes. *State v. Newman*, 568 S.W.2d 276, 280–81 (Mo.App. K.C.1978). Unlike *Newman*, however, here there were no impermissible questions about parole violations or the details of the crimes leading to Tramble's prior convictions. The State referenced Tramble's prior convictions and resulting sentences on cross-examination for the legitimate purpose of impeaching Tramble's credibility. This permissible use of a prior conviction is expressly authorized by statute. Section 491.050; *Frison*, 775 S.W.2d at 318–19. As such, we do not find this situation so "unusual or exceptional" that the trial court should have taken *sua sponte* action to halt the questioning. The trial court did not commit evident, obvious, and clear error that affected Tramble's substantial rights.

 Even assuming, *arguendo*, that the trial court should have *sua sponte* halted the State's questioning, no manifest injustice or miscarriage of justice resulted from the trial court's failure to do so. In light of the evidence presented, a reasonable jury still could have found Tramble guilty without the challenged testimony. At trial, a police officer testified that he witnessed Tramble throwing the stolen items into a yard. Conversely, Tramble testified that he did not throw anything onto the ground. "Witness credibility is a matter reserved for the jury." *State v. Williams*, 277 S.W.3d 848, 853 (Mo.App. E.D.2009). "As the trier of fact, the jury is the sole arbiter of witness credibility, and it is free to believe or disbelieve all, part, or none of any witness's testimony." *Id.* Thus, the jury was free to believe the testimony of the police officer over that of Tramble. Tramble's past convictions may very well have influenced the jurors when weighing the credibility of his testimony versus the testimony of the police officer. That evidence was properly before the jury. We are not persuaded that testimony regarding the disposition of these crimes impacted the jury's credibility determination as opposed to the testimony of the commission of those crimes by Tramble. Even if the testimony regarding Tramble's "favorable" sentences had been excluded, the officer's testimony, along with the other evidence presented at trial, was sufficient for the jury to find guilt beyond a reasonable doubt. Point denied.

## Conclusion

The trial court did not abuse its discretion when it overruled defense counsel's objection to the State's closing argument. The prosecutor's closing argument was permissible because it discussed the effects of crime on community without suggesting that this specific defendant posed a personal threat to the jurors or their families. Furthermore, the trial court did not plainly err in allowing the State to cross-examine Tramble regarding the sentences he served following his prior convictions. The trial court committed no evident, obvious, and clear error that affected the substantial rights of the defendant. Even if the court should have *sua sponte* halted the questioning, no manifest injustice or miscarriage of justice resulted from the error. Accordingly, we affirm the judgment of the trial court.

LAWRENCE E. MOONEY and PATRICIA L. COHEN, JJ., Concur.